## Cover, Appellant, *v.* Conestoga Traction Company.

*Negligence—Proximate cause—Street railway companies—Shifting cars—Breaking of coupling—Fellow servant—Nonsuit—Witnesses—Experts—Competency.*

1. In an action by a brakeman against his employer, a street railway company, to recover damages for personal injuries sustained by a fall between two freight cars belonging to the defendant company which were being shifted by defendant's motor, it appeared that the cause of the accident was a violent jar of the cars, due to the sudden application of power by defendant's motorman, which in turn caused the parting of the coupling between the two cars. There was no evidence that the coupling was out of repair or was defective or was any different from those in ordinary use. *Held,* the proximate cause of the accident was the act of plaintiff's fellow servant in the management of the motor, and that a nonsuit was properly entered.

2. In such case the court was not in error in refusing an offer to prove the inadequacy of the car equipment by an expert witness, who had testified that he had never seen the coupler in question, did not understand it, did not know the extent of its use, and that he would not be able to pass upon the adequacy of a car for the purpose for which it was used without seeing it.

Argued May 18, 1914. Appeal, No. 315, Jan. T., 1913, by plaintiff, from judgment of C. P. Lancaster Co., April T., 1906, No. 37, refusing to take off nonsuit in case of Harvey B. Cover *v.* Conestoga Traction Company. Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass for personal injuries. Before LANDIS, P. J.

The opinion of the Supreme Court states the facts.

The court entered a nonsuit, which it subsequently refused to take off.

*Error assigned,* among others, was in refusing to take off nonsuit.

C. E. Montgomery, for appellant.

W. U. Hensel, for appellee.

OPINION BY MR. JUSTICE STEWART, July 1, 1914:

The plaintiff was a brakeman in the employ of the defendant company. At the time he met his injury, and for five days preceding, his work was braking cars employed in hauling crushed stone from quarries located along a siding out to the main track, whence they were to be carried to their destination. On this particular occasion a loaded car was being hauled from the quarries by one of defendant's motors to which was attached an unloaded car. The design was to remove the loaded car and replace it with the empty car so that the latter might receive its freight. This could only be done by first hauling both cars out of the siding to the main track and there shifting them. It was while this was being done that plaintiff received his injuries. While standing on the bumper of the empty car engaged in uncoupling it from the loaded car so that it could be returned to the quarries, the motorman, after starting to shift, applied extra power to his motor in order to carry the loaded car a distance which would permit the unloaded car to return on the siding to the quarries. This application of additional power produced a sudden violent jar, and at this moment, and in consequence, plaintiff fell between the two cars and was injured. Two theories were advanced with respect to the cause of the accident. That contended for by plaintiff was that his fall was occasioned by the breaking of the iron bolts which were used to clamp together the upper and lower bars through which the coupling pin was dropped. The explanation advanced by defendant was that plaintiff was thrown between the cars by the sudden jar produced by the application of the higher power.

It is not disputed that an operating cause of the accident was the sudden violent jar produced by the act of

the motorman. It was that force which broke the bolts of the coupling; the cars were separated in consequence of the breaking of the bolts, and without the separation plaintiff would not have been injured. Observing this natural sequence the happening of the accident unquestionably can be referred to the act of the motorman, a fellow employee of plaintiff; and this was unquestionably the proximate cause, except as the case shows some intervening negligence on part of the defendant without which the accident would not have happened. The effort on part of the plaintiff was to show intervening negligence in the defendant in that the coupling between the cars was improperly constructed, and unsafe by reason of the bolts used in its construction being insufficient in size, weight and strength; and in the declaration filed this is the negligence charged. The nearest approach to making good this averment was an offer of evidence to which we will in a moment refer. There was no evidence in the case that any part of the coupling apparatus was out of repair; none that there were defects in any part of it that reasonable care and inspection would have discovered, and none that the coupling was any different from that in ordinary use. Yet its insufficiency was proposed to be shown by numerous offers when a witness was on the stand who had testified that he was acquainted with the construction of couplers of different kinds and makes, but who also stated that he had never seen this particular coupler, did not understand it, did not know the extent of its use, that there was a great variety of cars all of different designs, that about the only standard equipment in cars is the standard gauge, and that he would not be able to pass upon the adequacy of a car for the purpose for which it was used without seeing it. Having thus failed to show by this or any other witness that the coupler here employed was not in general use, and the doctrine res ipsa loquitur not applying, it was incompetent to show by

this witness that a coupler constructed as this was would be inadequate and uncertain.

That would be resting the case on theoretical opinion before any ground had been laid for it by evidence based on knowledge derived from experience and observation. The several offers when this witness was on the stand were all alike objectionable for the reason we have stated, and were properly refused. As the case then stood no intervening negligence on part of the defendant was shown, and except as this was shown, the plaintiff's injuries were necessarily referable to the jar occasioned by the application of increased power to the motor as the proximate cause, which, whether negligent or not under the circumstances, was the act of the motorman, a coemployee with the plaintiff, for which no liability would attach to the defendant company. In the view we take of the case it is unnecessary to discuss the theory advanced by the defendant, that it was the jar and not the breaking of the bolts that threw the plaintiff between the cars and occasioned his injury. For the reasons given we think the nonsuit was properly entered, and no error was committed in refusing to remove it.

The judgment is affirmed.